UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SAVE THE SOUND, INC.,<br> *Plaintiff*,<br><br>v.<br><br>CITY OF MIDDLETOWN,<br> *Defendant*. | )<br>)<br>) Case No. 3:21-cv-1646-OAW<br>)<br>)<br>)<br>)<br>)<br>) |

**RULING ON PLAINTIFF'S CONSENT MOTION FOR ENTRY OF CONSENT DECREE**

**THIS ACTION** is before the court upon Plaintiff's consent motion for entry of consent decree. ECF No. 35. The court has reviewed the motion, and the record in this case. For the reasons discussed herein, the motion is **GRANTED.**

**I. BACKGROUND**

On December 13, 2021, Plaintiff Save the Sound, Inc. brought a citizen suit pursuant to § 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1), against Defendant, the City of Middletown. *See* Compl. ¶ 1, ECF No. 1. Plaintiff alleged that Defendant was violating the Clean Water Act by failing to comply with the requirements "of the General Permit for the Discharge of Stormwater from Small Municipal Separate Storm Sewer System" ("the General Permit requirement"). *Id.*

Plaintiff alleges that the General Permit requirement is a way to regulate stormwater pollution. *See id.* ¶¶ 4–5. As its name suggests, stormwater pollution occurs when stormwater—which often accumulates after rainfall—carries "metals, oils, fertilizers, and other pollutants into streams, lakes, and Long Island Sound." *Id.* ¶ 3. These

1

pollutants affect water quality, such that the bodies of water become "unsuitable for human recreation and unable to support aquatic life." *Id.*  At the center of this litigation are bodies of water located in, or that run through, the City of Middletown: the Coginchaug River, the Connecticut River, the Mattabesset River, Sumner Brook, and Crystal Lake. *See id.* ¶ 2.

According to Plaintiff, the Clean Water Act regulates stormwater pollution by requiring municipalities in urbanized areas with "municipal separate storm sewer systems (known as 'MS4s')" to register for the General Permit for the discharge of stormwater. *Id.* ¶ 4.  Pursuant to the Clean Water Act, registered municipalities must apply for registration with the State of Connecticut.  *See id.* ¶ 29 (citing 33 U.S.C. § 1342(p)(2)(E)).  In order to successfully complete the General Permit registration, towns must "adopt best practices and take certain measures to reduce stormwater pollution such as mapping its stormwater sewer system, tracking down and stopping harmful discharges, implementing best practices and legal authorities, and reducing impervious surface." *Id.* ¶ 5.  The implementation of these procedures must be documented and made public in annual reports filed with the Connecticut Department of Energy and Environment Protection ("DEEP").  *See id.*  The MS4 General Permit is to be renewed once every 5 years.  *See id.* ¶ 30 (citing Conn. Gen. Stat. § 22a-430(c)).

Defendant City of Middletown is a registered municipality and therefore must comply with General Permit requirements.  *See id.* ¶ 6; *Cities and Towns*, CT.gov, https://portal.ct.gov/cities_and_towns/ [https://perma.cc/YPH5-Q3H5] (last visited May 29, 2024).  However, Plaintiff alleges that Defendant not only has failed to submit reports for 2017–20, but also that it has failed to comply with certain substantive provisions of the

General Permit requirements.  See Compl. ¶ 7, ECF No. 1.  Plaintiff claims that Defendant's violation of the General Permit requirements is contributing to pollution and impairing the waterways of Middletown, while perpetuating the "endemic stormwater pollution problem" of the City of Middletown.  Id. ¶ 8.  In raising these allegations, Plaintiff sought declaratory relief, injunctive relief, and a civil penalty for remedying past violations and for preventing future violations.  See id. ¶ 50.

On August 11, 2023, the parties filed a motion to stay proceedings, notifying the court that they had "agreed in principle" to terms of a settlement in the action.  Report of Pending Settlement & Joint Mot. to Stay Proceedings for 60 Days 1, ECF No. 30.

On September 27, 2023, they filed notice with the court, providing a copy of the proposed consent decree, and confirming that it had been sent for review to the Administrator of the United States Environmental Protection Agency and to the Attorney General.  See Notice 1, ECF No. 32 (citing 33 U.S.C. § 1365(c)(3); 40 C.F.R. § 135.5); Email Response, ECF No. 33-1 (confirming receipt of the proposed consent decree by the United States Department of Justice).

On November 13, 2023, the Environment and Natural Resources Division of the Department of Justice filed notice with the court, confirming that it does not object to the entry of the consent decree.  See Notice 1, ECF No. 34 (further clarifying that its lack of objection should not be understood as an "approval" of the consent decree).

Finally, on December 21, 2023, the parties filed a consent motion for the entry of consent decree.  See Mot. for Entry of Consent Decree & Supporting Mem. of L., ECF No. 35.

## II.     LEGAL STANDARD

"Before approving a consent decree, a district court must be satisfied that it is at least fundamentally fair, adequate[,] and reasonable." *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990) (citing *United States v. City of Miami*, 664 F.2d 435, 439 441 (5th Cir. 1981)); *see United States v. Upstate Shredding, LLC*, No.3:23-cv-847(AMN/ML), 2023 WL 7114999, at *2 (N.D.N.Y. Oct. 27, 2023) (adopting the holding of *United States v. Oregon*, 913 F.2d at 581)).

In reviewing whether a consent decree is fair, adequate, and reasonable, the court must "eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *United States v. Hooker Chemicals & Plastics Corp.*, 540 F. Supp. 1067, 1072 (W.D.N.Y. 1982) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974)).

On one hand, sufficient deference should be applied, particularly in cases and areas where the court lacks expertise. *See United States v. Bouchard Transp. Co., Inc.*, No. 08-cv-4490(NGG), 2011 WL 13299921, at *3 (E.D.N.Y. Mar. 18, 2011) (granting deference "to the expertise in determining settlements of a government agency charged with enforcing the nation's environmental laws"). Such deference also is undergirded by "a strong judicial policy in favor of settlements." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). Moreover, because "it is the parties' agreement that serves as the source of the court's authority," consent decrees are not circumscribed by legislative limitations "on the power of federal courts to impose obligations." *Local Number 93, Int'l Assoc. of Firefighters, AFL-CIO v. City of Cleveland*, 478 U.S. 501, 522–

23 (1986).  That is, courts are not "necessarily barred from entering a consent decree merely because the consent decree provides broader relief than the court could have awarded at trial."  *United States v. Chevron U.S.A., Inc.*, 380 F. Supp. 2d 1104 (N.D. Cal. 2005) (citing *Local No. 93*, 478 U.S. at 525).  In sum, "[a]bsent a substantial basis in the record for concluding that the proposed consent decree does not meet these requirements, the district court is required to enter the order."  *Acosta v. Bratcher*, 343 F. Supp. 3d 108, 112 (W.D.N.Y. 2018) (citing *U.S.S.E.C. v. Citigroup Glob. Mkts.*, 752 F.3d 285, 294 (2d Cir. 2014)).

On the other hand, the court may not approve consent decrees which allow parties to "take action that conflicts with or violates the statute upon which the complaint was based."  *Friends of Earth v. Archer Daniels Midland Co.*, No. 84-cv-413, 1990 WL 104017, at *1 (N.D.N.Y. July 19, 1990) (citing *Local Number 93*, 478 U.S. at 525).

### III.  DISCUSSION

"A district court, before approving a consent decree that implicates the public interest, must 'be satisfied of the fairness of the settlement.'"  *Bouchard Transp. Co., In.*, 2011 WL 13299921, at *3 (quoting *Janus Films, Inc. v. Miller*, 801 F.2d 587, 582 (2d Cir. 1986)).  The court also must determine whether the consent decree would "further the objectives of the law on which the complaint was based."  *S.E.C. v. Levin*, 881 F.2d 1165, 1181 (2d Cir. 1989).

#### A. Fairness of the Consent Decree

In the underlying complaint, Plaintiff alleged that Defendant's noncompliance with the Clean Water Act was "contributing to the pollution and impairment of Connecticut

5

waterways which, in turn, is perpetuating the City of Middletown's endemic stormwater pollution problem."  Compl. ¶ 8, ECF No.1.  This clearly implicates the public interest. *See Bouchard Transp. Co., Inc.*, 2011 WL 13299921, at *3.

In order to analyze the fairness and reasonableness of the consent decree, the court may limit its review to "a narrow[] set of factors," which includes the strength of Plaintiff's case, the good faith efforts of negotiations, the opinions of counsel, and the litigation risks if the consent decree is not entered.  *Id.* (citing *United States v. Lexington-Fayette Urb. Cnty. Gov't*, 591 F.3d 484, 489 (6th Cir. 2010); *Chevron U.S.A., Inc.*, 380 F. Supp. 2d at 1120).

With little briefing on the merits of the claim, the court finds it difficult to ascertain the strength of Plaintiff's claim.  In addition, the proposed consent decree confirms that Defendant would enter into the agreement without admission of "any of the facts or violations alleged in the Complaint."  Consent Decree 1, ECF No. 35-1.

However, the court does not doubt that the consent decree is the result of good faith, arms-length negotiation between the parties.  *See* Mot. for Entry of Consent Decree 3, ECF No. 35; *Lexington-Fayette Urb. Cnty. Gov't*, 591 F.3d at 489.  Also evident from the filing of the instant consent motion is that both parties agree to the procedural and substantive reasonableness of this consent decree.  *See* Mot. for Entry of Consent Decree 1–2, ECF No. 35

While the outcome of the action may have been different had the case proceeded to trial, "voluntary compliance on an issue where there is a potential disagreement is a better alternative than the uncertainty of litigation over that issue." *Bouchard Transp. Co., Inc.*, 2011 WL 13299921, at *4 (citing *United States v. District of Columbia*, 933 F. Supp.

42, 47 (D.D.C. 1996)); *see United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 90 (1st Cir. 1990) (recognizing that district courts may consider the "risks of trial and the desirability for expedition"); *see also United States v. Seymour Recycling Corp.*, 554 F. Supp. 1334, 1337 (S.D. Ind. 1982) (finding support for the consent decree where "time [was] of the essence in commencing [the] cleanup").  It is particularly notable how the terms of the consent decree compare with the relief sought by Plaintiff in its original complaint.

Among the remedies prayed for in the complaint, Plaintiff sought injunctive relief to prevent further violation of the Clean Water Act and to restore the relevant waterways, a civil penalty not to exceed $ 56,460, and award of litigation costs to Plaintiff. *See* Compl. ¶ 50, ECF No. 1.  Through the consent decree, the parties agree that Defendant shall pay $75,000 to clean certain tidal marshlands between Middletown and Cromwell and an additional $30,000 as satisfaction of Plaintiff's claims for attorney's fees.  *See* Consent Decree 3, ECF No. 35-1.  The consent decree also confirms that the City of Middletown shall "complete all Compliance Measures," which include various monitoring, reporting, and cleanup obligations. *Id.* at 4; *see id.* 11–13.  In sum, this leads the court to conclude that the parties agreed to the consent decree with the goal of "satisfactorily compensat[ing] the public" for costs associated with remedial and restorative measures. *Cannons Eng'g Corp.*, 899 F.2d at 90.

Finally, the court finds support for the fairness of the consent decree from the lack of any objection from the government.  Pursuant to 40 C.F.R. § 135.5(b)(2), Plaintiff served a copy of the proposed consent decree upon the United States Attorney General and the Administrator of the Environmental Protection Agency on October 10, 2023.  *See*

Notice, ECF No. 33.  After review of the consent decree for compliance with the requirements of relevant statutes and the purpose of the Clean Water Act, the U.S. Department of Justice stated that it had "no objection" to the proposed consent decree.  Notice 2–3, ECF No. 34.  Although the government makes clear in the same notice that its lack of objection does not "imply approval," the court finds that some presumption of validity may be garnered from the government's review.  *See United States v. Hooker Chemical & Plastics Corp.*, 540 F. Supp. 1067, 1080 (W.D.N.Y. 1982) (finding that approval by the "state and federal agencies which are charged with the implementation and review of the various environmental protection statutes" supported "a strong presumption of validity").

### B. <u>Objective of the Clean Water Act</u>

"When Congress enacted the Clean Water Act, the stated objective was 'to restore and maintain the chemical, physical, and biological integrity of the Nation's waters.'"  *Lexington-Fayette Urb. Cnty. Gov't*, 591 F.3d at 488 (quoting 33 U.S.C. § 1251(a)).  The agreement is tailored to addressing such an issue.  The stated objective of the consent decree is to "require Middletown to take all measures necessary to fulfill the objectives of the [Clean Water Act], the requirements of the General Permit, and any applicable federal or state regulations, and to reduce or eliminate Middletown's contributions to stormwater pollution."  Consent Decree 2, ECF No. 35-1.  The substantive terms of the consent decree fall in line with the objective, containing both restorative and preventative measures to ensure compliance with the Clean Water Act.  *See generally id.*

## IV.      CONCLUSION

Accordingly, it is thereupon **ORDERED AND ADJUDGED** that Plaintiff's consent motion for entry of the consent decree is granted.  A signed version of the consent decree shall be docketed as a separate entry for clarity of the record.

**IT IS SO ORDERED** in Hartford, Connecticut, this 29th day of May, 2024.

                                            /s/
                              OMAR A. WILLIAMS
                              UNITED STATES DISTRICT JUDGE